We're ready for the next case, Parker v. United Airlines, 21-4093. Counsel for appellant, if you'd make your appearance and proceed. Good morning, Your Honor. May it please the Court. My name is Peter Katsaros. I represent the plaintiff appellant, Jeannie Parker. This is an employment discrimination case coming to this Court from the grant of summary judgment to the employer, United Airlines, on two counts, Family Medical Leave Act discrimination and retaliation, count one, and count two, Family Medical Leave Act interference. You're not pursuing the interference claim here on appeal, are you? Well, I thought we were appealing both. Did you address the interference claim in your appeal brief? I think we're proceeding on the first alone. Okay. I apologize. The two issues that we're urging for grounds for appeal are that the trial judge applied the wrong legal standard on the cat's paw causation analysis under FMLA, and the trial judge ignored well-settled principles applicable to summary judgment determinations, deciding credibility questions and drawing the inferences in favor of the movement rather than the opposition. Let me pursue the standard cat's paw portion of your argument for a second. This is going to get a little in the weeds, but I'll do the best I can to ask these questions. Is it enough under the FMLA, just as a general matter in terms of causation, is it your view that it's enough in the FMLA retaliation context for the use of that leave to be a motivating factor? In other words, that is the causation standard, is it not, as opposed to but for? We submit that the causation factor should be that the use of FMLA should not be a negative factor in the employer's determination. Which is the regulation. That's correct. I think we have a case, but that correlates generally to the question of whether it is a factor, right? Right. As opposed to the but for factor of the adverse action. Absolutely. Okay. And is it your view that that's in line with the causation standard that was at play in STOB? Yes, except it's a lower standard. It is a lower standard than in STOB. In STOB was USERA, which was but for causation, motivating, you know, motivating factor. Our standard we submit that this court should adopt is it should not be a negative factor. It should not be any negative factor. We think that's a lower threshold. Well, we specifically held in Simmons v. Sykes that STOB did not involve but for causation. And it's my understanding that STOB involved essentially a standard that was equivalent to what was in Title VII, which is a motivating factor. I agree with that. Okay. I agree with you. All right. You would still need to show, right, that the unlawful animus was a proximate cause of the adverse action, right? I believe so. And there can be multiple proximate causes. Well, proximate cause implies that at least it is not attenuated, that there is a connection that is a reasonable one. What do we do with the fact that in your briefing you don't address Ms. Ladone at all? I mean, there is no argument that's addressed to what her role is here. How does that help you or hurt you on the question of whether any adverse, well, any unlawful animus by Ms. Fouché was the proximate cause for the termination? Well, we believe that if you look at the Yang opinion, who is supposedly the independent decision maker, that adopts virtually everything that Fouché said and ignored all of the evidence offered by Parker. Ladone came 85 days after the termination. There is a brief discussion in the brief about Ladone, and we say, citing a case from this court, that it's so far removed, so far removed from the termination that it's virtually irrelevant. All right, well, and I think in your, specifically in your district court briefing, you said her role was irrelevant, but the bottom line is, Ms. Ladone, could she not have reversed the decision of Yang? She probably could have reversed it, but it had already been done and affirmed. Well, if she could have reversed it, how could it be irrelevant? Because it could have kept your client from being terminated. And she cut and pasted, she cut and pasted language directly from the Yang opinion, which bought entirely Fouché's analysis. However, one of the differences is that the union representative, Ms. Parker, didn't appear before Ms. Ladone, and the union representative did not argue to Ms. Ladone that she was deserving of her job. She just pleaded for mercy, right? That's correct. That's correct. And so I don't know that even if we credit your Staub-Ketzball theory with regard to Ms. Yang, if we are to consider the second layer of administrative review before Ms. Ladone, I don't know that you have any evidence that you can create a genuine issue of material fact with regard to the Ketzball theory involving Ms. Ladone. Respectfully, we just have not seen any authority that would consider a post-termination review done 85 days after the termination as significant. Why does the temporal time matter if she had the power to reverse the termination? I mean, if she was the ultimate determiner here of whether your client was going to be terminated or not. And I'd refer you in part to Singh, our case, S-I-N-G-H, where there were also two layers of review, and we held that in order to make a Ketzball theory work, you had to show both layers. Both layers were influenced by the unlawful animus. So how do you do that here if you don't fully explain why Ms. Ladone would have been influenced by unlawful animus? In the litigation, in this litigation, we have evidence in the record. We made argument in the brief that if you look at the Ladone opinion, she cut and pasted from the Yang opinion, which we think is entirely all about fouché and doesn't give any credit or analysis and is an uncritical rubber stamp. Well, you can say that, but it is a review that has been done. She doesn't purport to have cut and pasted, and you don't have any, as with Yang, you have no deposition testimony explaining what she did and what she didn't do, do you? We have no deposition testimony, but I have several examples of what Yang did not do to establish an independent investigation, which, separate and apart from what fouché said, showed grounds for dismissal under the employment policy. Well, even though we were talking about Ladone, let's talk about Yang for a second. When you read the terms of her letter, she says, this is what the union said, this is what you said, this is what I end up having as my view. Where in that do you end up with an ability, but for speculation, to say that she did not give an independent review? I mean, you didn't depose her, so we don't have any basis to know why she was doing what she was doing. There was no analysis of the evidence produced by Parker in that case. She, Parker rebutted the three major telephone calls. The three major telephone calls that were at issue in this case, Parker came in and gave explanations for all of them. She said one was a scratchy phone, but at the same time, she's apologizing, and I don't follow when you say that. She gave explanations for all three. That's not my understanding. My understanding is she acknowledges mistakes. Could I explain? Please. The July 15th call, documents, business records in the record offered at the IRM show that Parker was on the line with another agent trying to get information to help the customer. The business records in the record show that Parker was on trying to get assistance for the customer until 116 in the afternoon. The business record shows that the customer hung up. The customer hung up. Parker was charged with hanging up. There's no evidence to support that. Yang never analyzed that evidence, never read the documents, and found in favor of the company. Looking at the Yang letter, page two, quote, top of the letter, during the meeting with your union representative, Ms. Jolly, stated that there was no denial of what happened on the calls. Instead, she was arguing mitigating circumstances, period. Now, do you dispute that's what happened at that hearing? Absolutely disputed. Vigorously. Vigorously we disputed. Parker and her union representative on the June 25th call played a video, and that video showed that Parker's computer screen froze, and she couldn't connect. She couldn't do anything, and the only way to restart the system was to hang up. And that video, I don't believe, was even addressed by United in their brief. They had no answer to that. Do you dispute that she acknowledged mistakes and apologized? Not at all. Not at all. But I think the appropriate analysis in this case, in the context of a circumstantial case of employment discrimination, trying to prove pretext, is were the policies of the employer applied equally to comparable people? And our submission is the woman that used the FMLA for proper purposes, her own illness, and caring for her terminally ill father, was singled out, and can't be sued. Treated differently. Was singled out and treated differently. She never got the progressive discipline that everybody else got. There's an agent there in our record, Agent 6. You know, 10 times was intoxicated and on drugs. He got 15 face-to-face counseling sessions with Foucher and her colleagues, and then a termination warning, but not a termination. The person that got singled out and punished and retaliated against was the woman who used the protection of a federal statute. And this record is replete with disparate treatment. The problem here, it seems to me, is that if we were proceeding entirely upon what Ms. Foucher said, that argument might carry more punch. The reason being that you would have a direct connection to show pretext in what she said and the unlawful animus. But what you have here are two layers of review. And when you look at our case, Lobato, and you look at our case, the Singh, both of them talk about the notion that at each layer, you have to show uncritical reliance. That's the language they use, uncritical reliance. Number one, as it relates to Ms. Ladan, you didn't show that she did anything. I mean, you say she cut and pasted, but there is no evidence in the record as to what her rationale was, what she did. So how do you show uncritical reliance as it relates to her? Our only argument is we believe she cut and pasted the opinion, and Yang ignored all the rebuttal evidence, all the rebuttal evidence. And Staub asks or suggests an independent investigation that puts aside the animus, the unlawful animus. The bad performing agent, and finds, excuse me, finds on its own grounds for termination. There's nothing like that in this case. Yang never asked Foucher, how come the documents in the record don't support what you say about July 15th or June 25th or July 2nd? There's no inquiry like that. Let me ask you a question, and I hope I'm not eating up your 31 seconds of rebuttal time. But you know, the parties have extensively briefed invited error, and I want to ask you this. The parties have extensively briefed invited error, and so I want to ask you a little bit about that. So Judge Jenkins quoted the plaintiff's brief with this statement, the Catspaw theory requires a plaintiff to show that the decision maker followed the biased recommendation of a subordinate without independently investigating the complaint against the employee. That was your response brief at page 36 in district court. Judge Jenkins applied that. Now, he then said, and you argued in your response brief thereafter in district court, well, all Ms. Yang did was passively accept what had been presented to her by Ms. Foucher, and she really did not conduct an independent investigation. Now, you argue to us, I'm sorry this question's so long, but you argue to us that, well, under Staub, it's not just an independent investigation. There's something else that I forgot to tell you, Judge Jenkins, about, and that is under Staub, you have to have not only an independent investigation, but you also have to show that the independent decision maker did not actually take into account the recommendation of the biased supervisor. Well, my question to you is, how was Judge Jenkins supposed to know that? Because you didn't qualify that when you represented an argument to him that all you needed was an independent investigation. And if I'm an arbiter, let's say an arbitration, and I have the plaintiff and the defendant making competing presentations to me, and I say, well, the plaintiff is credible, the defendant is not, the plaintiff wins, well, Judge Jenkins, I'm sure, would say, well, there was an independent investigation, and he took into account what the plaintiff said, but that's just what every fact decision maker does, assesses credibility. So how was Judge Jenkins supposed to have realized that he was committing an error if he credited everything you say in your opening brief on appeal, because all you told him was the catch-all theory applies only in the absence of an independent investigation, and he said, well, there was an independent investigation. And our answer is, we did not believe that the facts on the record developed in discovery showed that Yang did anything other than what this court said in Coca-Cola bottling, which is allow somebody down the chain in the employment to fabricate things, and then turn the file over to somebody in the personnel department and try and sanitize the discrimination. That's what was on his mind. That's what prior counsel argued. That's what we're arguing here. But with Staub clarifying the law, we believe that should have been considered by the court. Thank you very much. Thank you, and may I have one minute for rebuttal? We'll see how things go. Okay. Thank you. Thank you. Good morning, Your Honors, and may it please the court. My name is Jessica Whalen, and I'm here on behalf of Appley United Airlines. With me at counsel table is my colleague, Karina Sarsen. The issue before this court is a narrow one. What is the standard for cat's paw liability in an FMLA retaliation case, and did plaintiff appellant Jeannie Parker submit sufficient facts and evidence to meet that standard and overcome summary judgment to get to a jury? The district court found that she did not, and United respectfully submits that the district court was correct. Unless the court would prefer otherwise, I will begin with the procedural grounds upon which this court may affirm invited error. Before addressing Parker's substantive argument that the district court applied the improper standard for cat's paw liability, I'll end with an alternative basis for affirmance that this court can affirm the district court's grant of summary judgment. First, United does not believe there is any error on the part of the district court, but if there was, it was invited by Parker. The thrust of her argument on appeal is that the district court erred by failing to analyze the cat's paw liability argument under Stalvey-Proctor, a case involving discrimination under USERRA, which is a statute that protects service members and veterans' employment rights. The error Parker claims is that the district court instead relied on English v. Colorado Department of Corrections, a Tenth Circuit case addressing the cat's paw liability theory. That's not true. That's really true. They do argue that that line in English is not comprehensive, but they do specifically argue extensively in their summary judgment brief that Ms. Yang erred in determining that there was an independent decision even though she had passively accepted everything that Ms. Foucher had said and discounted everything Ms. Parker's and her union representative had said. So they didn't cite Staub. He didn't deny that. But didn't they argue exactly what the substance is from Staub? They did argue exactly what the substance is from Staub, and that goes to the point that the English standard and the Staub standard really aren't as different as Parker makes it out to be. Staub recognizes, in the cases that apply, Staub recognizes that an independent investigation can break the causal chain and can render a subordinate's potential animus too remote to be a cause of the ultimate employment decision. And so that gets to a later point. But to your point, Judge Bachrach, that you asked opposing counsel, if you look at page 463 of the record, that's Parker's summary judgment response, where Parker puts forth the English standard. And then you look at page 38 of their opening brief, and the standard that Parker asks this court to overturn, or the standard that Parker says the district court was erroneous in applying, is verbatim the standard that Parker argued before the district court. And so under the invited error doctrine, a party can't profit on appeal from an error that it induced the district court to make. It's principles of fairness that go into that, and principles of finality of litigation. We only want issues to come up on appeal that the district court had an opportunity to and did address. Is it a forfeiture problem rather than an invited error problem? I think forfeiture is a bit different. Invited error is a very specific doctrine that says if a party induces action by the court, the party cannot argue error because the court took such action. But nobody questions that that sentence in English is the correct representation of the law. The nuance is whether or not it's further fleshed out by this principle in Stahl that a decision maker is not making an independent determination if he or she takes into account the recommendation of the bias supervisor. And that's the part that wasn't argued to Judge Jenkins. Certainly Judge Jenkins never had the Stahl decision presented to him, but I would respectfully disagree with your statement that no one's trying to deviate from the English standard because in Parker's opening brief, again at page 38, she states, initially the district court misstated the applicable standard by stating that to recover under this theory, the plaintiff must show the decision maker followed the biased recommendation of a subordinate without independently investigating the complaint against the employee. What Parker's essentially asking this court to do is find that Stahl applies some sort of categorical rule that if the potentially biased supervisor has any impact or any input into the employment decision, that that should render it a cat's paw case. And that's not what the FMLA does. The FMLA, or I'm sorry, that's not what the cat's paw theory does. It's not a strict liability standard that Parker is asking for. And in fact, if you look at the Lobato case out of this circuit, this court rejected a very similar argument to what Parker's making here and said, and actually quoted from the Staub decision. Let's see if I can find it. It was in a footnote, was it not? It was at page 1295 of Lobato, and actually Lobato quotes directly from Staub in saying and in recognizing that the independent investigation can cut off the causal chain in a cat's paw case. Well, let me be clear then on what your view is on this question of invited error. One could say that one argument to rebut or to allege invited error would be they made argument A below. Now they're telling you the district court relied on argument, that the district court erred in relying on argument A, invited error. But I understood you to say early on in your colloquy with Judge Bagrat, that you believe that their argument below and on appeal is the same thing. No. I mean, that there really is no space between Staub and English. No. So if you look at page 463 of the record, which is the MSJ response brief, Parker states, So that's the standard that they argued on summary judgment. And are you saying they argue a different standard here? They're trying to argue that Staub in some way overruled the English case, is the way that I read their brief on appeal. And if you look at page 38 of the brief, they quote the language of the English case. that they said in the response brief. But they preface it by saying the district court erred by applying this standard. And the standard that they cite is exactly the standard that they advanced before the district court. And that's quintessential invited error. It's as if in the, I think we cited a few cases, St. Anthony's Hospital, where one party advanced a de novo standard of review before an administrative court. Well, an invited error applies when you're arguing a different theory on appeal. You're saying they should have applied theory B. They applied theory A. And you say invited error because you gave them theory A. What I understand you'd be saying is we're only talking about theory A. So this is not the classic invited error situation. Because on appeal, you're saying they're arguing the same thing in substance that they did below. They're just putting STOB on it and saying that it's something different. That is United's position. That's not Parker's position. We're saying the error was invited because they're now trying to backtrack on their advancement of English. You're saying that, I'm sorry, go ahead. And say that some new standard applies. We're saying even if some new standard applies, there's no substantive difference between the English standard and the STOB standard. Because they both recognize that an independent investigation cuts off the causal chain. And even if a new standard was articulated by STOB, they should not get the benefit of the new standard. That's correct. Yes. I'd like to address just a few points made in Parker's opening argument. And this goes, again, to something that Judge Bacharach said, which is Yang didn't simply rubber stamp the decision of, or I'm sorry, the recommendation of Ms. Foucher. She did what any fact finder would do. She heard the evidence from both sides. There was an opportunity for Parker to present her side of the story, to rebut the evidence. Exhibits were exchanged 72 hours in advance. Parker was represented by her union representative at the hearing. So Yang heard all of this. And Yang did what any fact finder would do, which is weigh that evidence, weigh the credibility. Parker simply doesn't like that Yang agreed with the facts and the evidence as presented by United. But that seems to be a problem under STOB, though. I mean, that makes intuitive, logical sense to me until you read STOB, in which, as I read it, the cat's claw theory does apply if the decision maker relies, at least in part, by taking into account the recommendation of the biased supervisor. And so ordinarily, yes, an independent arbiter assesses credibility and decides on who is more credible. That seems problematic under what we read in STOB. Am I wrong? Well, respectfully, yes, I believe so. And I would cite the court to a case that Parker cited in her argument, EEOC v. BCI Coca-Cola Bottling Company. And that's a rubber stamp case. That's a cat's claw case, no doubt about it. It's in the Title VII racial discrimination context. But there, however, the decision maker relied completely on the biased supervisor, conducted no independent inquiry, and failed, and this is a quote, to take even the basic step cited by this court in Kendrick of asking Mr. Peters, the employee, for his side of the story. So you have cases that are as minimal as English and Kendrick where, you know, a decision maker calls the employee in for a meeting and says, what do you have to say about this? And that's deemed to be enough to break the causal chain. Well, if Coca-Cola Bottling was before STOB, and so the point would be if he is able to get the benefit, Ms. Parker is able to get the benefit of STOB, then how do those cases get you out from under the standard that STOB would have articulated? Well, STOB still recognizes that an independent investigation can break the causal chain, and so you have to look at what is sufficient to be an independent investigation. I'd cite the court to two cases. One is out of the Western District of Oklahoma. It's the PYAT case, P-Y-E-A-T-T. It's from 2010 in the ADEA context, and it's at 2010 Westlaw 325-9828. Is that case in your brief? That was not cited in our brief, no. Well, we can do a 28-J letter on it. You can go ahead and talk about it, but do that, please. Absolutely. The second case, also not in the brief and because it was in response to arguments raised in the reply brief, is Woods v. City of Berwyn. That's a Seventh Circuit case from 2015, so post-STOB. It's an FMLA and ADEA case. That's found at 803 Federal Reporter 3rd Series 865, and in those cases you had investigations that were much more similar to the investigation that was done here. You had a due process hearing with representation, presentation of exhibits, objections, opening and closing statements, and so on the spectrum from English and Kendrick on the one side, where it's simply asking the employee for their point of view, to on the other end, this full due process hearing were much closer to the PYAT and Woods end of the spectrum. The other thing I'd like to address is that counsel disputed that Ms. Parker made any apologies or admissions of wrongdoing before Yang, and that's simply incorrect. Yang had before her Ms. Parker's apology letter in which she stated that she, you know, was under a lot of stress and regretted the lengthy hold times, regretted the conduct. Yang had statements by, Yang heard statements at the IRM hearing from Parker's union representative that you can't negate the conduct, but we simply ask that because she's a 26-year employee that you understand the mitigating circumstances. And at the third step review before Ms. Ladani, same thing. Parker waived her right to participate and relied completely on Mr. Gibson, her union representative, who again did a mea culpa and simply argued mitigating circumstances. In your brief, you spent some time talking about textual differences in the statute between STOB and the FMLA. Well, didn't, don't both of those essentially apply a motivating factor, a negative factor in the case of the FMLA and in STOB, a motivating factor? I see my time is running up, but with the court's indulgence I'll answer. The causation standards are similar, a negative factor in the FMLA and a motivating factor in USERA, but the reliance solely on the causation standard is a bit misplaced because you have to look at the analytical framework under which FMLA cases versus USERA cases are analyzed. In the FMLA, we have the three-step McDonnell-Douglas framework where causation is just one piece of that prima facie case element in the first step. USERA, however, follows the two-step framework that's used in National Labor Relations Act cases. And there, in step one, the employee must show that their adverse employment decision, that there is a motivating factor. And then the burden of persuasion shifts completely to the employer in step two to prove that there were legitimate reasons for the action. There's no third step of pretext in the USERA context. Okay, but how did that play out for purposes of being, why they're relying on STOB here? They're relying on it for the causation standard. They are relying on it for the causation standard, but they're only saying that, or counsel stated that it's a less stringent standard under the FMLA. It's in fact more stringent because in the FMLA context, the burden of persuasion actually rests on the employee in that third step. And so we can extend something from the less stringent USERA context into the FMLA context. Okay, thank you. Thank you. Yes, you have a minute. Thank you. Let me just say that this case is very significant, not just for the plaintiff. Everybody's going to get sick. Everybody's going to have a parent that's going to get terminal illness. We have a 26-year employee here who was promoted, commended by the President of United Airlines for her work, and had a sterling record until she ran into an illness and her father's death. There's plenty of evidence in this record to show that Foucher had all the discriminatory animus that this Court recognized in Coca-Cola bottling and the Supreme Court recognized in stout. And to affirm here essentially eviscerates the FMLA. We urge you to reverse. Thank you. Thank you, counsel, for your fine arguments. Case is submitted.